UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.00-6188-CIV-DIMITROULEAS

RUPARI FOOD SERVICES, INC.,

        Plaintiff,

vs.

SPARTA FOODS, INC.,
A Minnesota corporation,

        Defendant.
_____/

Magistrate Judge Johnson

**NIGHT BOX
FILED**

**FEB 1 6 2000**

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## PLAINTIFF, RUPARI FOOD SERVICES, INC.'S MEMORANDUM OPPOSING DEFENDANT, SPARTA FOODS, INC.'S MOTION TO DISMISS

COMES NOW the Plaintiff, RUPARI FOOD SERVICES, INC. ("Rupari"), by and through its undersigned attorneys, and, in accordance with this Court's Order to Plaintiff to Show Cause Why Defendant's Motion to Dismiss Should Not be Granted Based Upon First-Filed Rule, dated February 8, 2000, files this Memorandum in response to the Order, and says:

### PREFACE

Plaintiff understands that the Court's order requests Plaintiff only to address issues concerning whether Plaintiff's Complaint should be dismissed or, alternatively, transferred to the United States District Court, District of Minnesota, based upon the First-Filed Rule asserted by Defendant in its Motion to Dismiss and that the other arguments raised in Defendant's Motion to Dismiss have been denied. Plaintiff will therefore, in responding to the Order, limit this Memorandum to the First-Filed Rule issues.

Since many of the issues the Court has asked Plaintiff to address are also relevant to Defendant's Motion to Transfer, Plaintiff by this reference also incorporates Plaintiff's Responsive

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

CASE NO. 00-6188-CIV-DIMITROULEAS

Memorandum Opposing Defendant's Motion to Transfer which will be filed subsequent to the filing of this Memorandum.

Plaintiff does not consent to removal and does not waive its right to contest it. Because of time constraints to comply with the Court's February 8, 2000 Order, Plaintiff must first file its response to the Order. However, Plaintiff intends to timely object to removal and seek remand.

## FACTS

Rupari is a Florida corporation with its principal place of business in Deerfield Beach, Florida. Rupari is an importer and distributor of food products. Rupari has no offices, employees or officers in Minnesota and is not licensed to do business in and does not conduct business in Minnesota. As is hereinafter described, concerning any matter involving the parties to this lawsuit, representatives of Rupari have appeared in Minnesota on only two insignificant occasions, (1) a courtesy visit arranged at Sparta's request, and (2) after dispute arose between the parties.

The Defendant, SPARTA FOODS, INC. ("Sparta"), is a Minnesota corporation with its principal place of business in New Brighton, Minnesota. Sparta is a manufacturer and seller of Mexican and other food products both for itself and for other food companies. Sparta's officers initiated a business relationship with Rupari by traveling to Rupari's office in Florida to discuss and negotiate a letter of intent, prepared and signed in Florida, and a Supply Agreement.

In December, 1998, or early January, 1999, Sparta called Rupari requesting a meeting to explore the possibility of the parties conducting business in the future. Sparta officers then flew

-2-

CASE NO. 00-6188-CIV-DIMITROULEAS

to Florida in early January, 1999 to meet with Rupari officers at Rupari's offices. During the course of this meeting, Sparta's officers presented and solicited for Rupari's consideration a new idea to package chips and cheese and chips and salsa products (the "Product") to be distributed by Rupari under a brand name and packaging design to be developed by Rupari. This was the first of several visits by Sparta representatives to Florida concerning this potential business idea.

Rupari registered the name "Banditos" as its brand name to market the Product and other unrelated Rupari food products, all as products of Rupari. Rupari has and continues to market and sell, under the Banditos brand, food items that have no involvement with Sparta.

During a meeting at Rupari on or about January 14, 1999, Sparta prepared and the parties signed a letter of intent. About one month later, Sparta sent Rupari a draft of a Supply Agreement. In May, 1999, the Supply Agreement, as modified by the parties, was executed by Rupari in Florida.

While the Supply Agreement was being negotiated, Rupari's president, Robert Mintz, traveled to Minnesota for one day, at Sparta's request, for the sole purpose of being introduced at Sparta's annual shareholders meeting.

After execution of the Supply Agreement, Rupari ordered a quantity of packages of the Product for sample test orders for Rupari's customers, Circle K convenience stores, Winn Dixie and Albertson. After delivery of the orders Rupari began receiving complaints from its customers that the Product was defective. Rupari's notification to Sparta of the defective Product failed to result in any remedy by Sparta, other than Sparta's numerous promises that this problem would

-3-

be corrected.

In October, 1999, after being put on notice of the Product defect, Sparta invited Rupari to visit Sparta's plant in order to resolve the defective Product problem. Rupari thereupon sent Mr. Mintz and two other Rupari employees to Minnesota solely for this purpose. This was the second and only other occasion Rupari made contact with the State of Minnesota. This trip did not resolve the status quo, to wit: Sparta made no improvement on the defective Product and Rupari had no conforming Product to offer to its customers. However, Sparta advised Rupari on October 29, 1999 that Sparta had returned 661,100 containers of defective cheese worth $165,275.00 to Sparta's supplier who was manufacturing this item for the Product package. The reason given for return was "due to quality issues". Rupari refused to pay for the defective and non-conforming Product which Rupari had received and delivered to its customers.

During the last quarter of 1999, Rupari also became aware that Sparta had been representing to the public that the Banditos brand name and product was the property of Sparta. Upon becoming informed of this misrepresentation, Rupari demanded Sparta make appropriate retraction. Although Sparta promised to do so, Sparta essentially ignored Rupari's demand and has continued to make the misrepresentation to the public. Sparta's conduct not only violated Rupari's trademark rights, it violated a confidentiality agreement of the parties.

Paragraph 13.1 of the Supply Agreement provides in pertinent part:

> 13.1 Sparta and Rupari have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them. It is with the same spirit of cooperation that these parties <u>pledge to attempt to resolve any dispute amicably, without the necessity of</u>

CASE NO. 00-6188-CIV-DIMITROULEAS

litigation.  Accordingly, the parties agree that if any dispute ("Dispute") arises between them concerning this Agreement, other than an action to enjoin the unauthorized disclosure of confidential or proprietary information, the parties will make a good faith attempt to resolve the Dispute by alternative dispute resolution (ADR) prior to commencing any legal action to interpret or enforce this Agreement.

(Emphasis supplied).

The Agreement also provides the procedure to initiate and conclude the ADR. Sparta proposed this provision for inclusion in the contract. A copy of the Agreement is attached as Exhibit "A".

On November 18, 1999, Sparta's attorneys wrote Rupari demanding payment for the defective Product, claiming the failure to pay to be a breach of the Supply Agreement and asserting that, if Rupari disputed Sparta's claim, the letter constituted the initiation of alternative dispute resolution. A copy of this letter is attached as Exhibit "B".

On November 24, 1999, Rupari's counsel responded advising that Rupari disputed Sparta's claim and otherwise conformed with the ADR procedure. A copy of this letter is attached as Exhibit "C".

During this period Sparta continued to represent to Rupari that Sparta would promptly resolve the problem of defective Product and that Rupari should not be concerned by demands of Sparta's attorneys, describing its attorney's actions as mere posturing.

On December 5, 1999, Sparta sent Rupari new cheese samples to inspect. The new samples did not correct the defect.

The parties agreed to conduct ADR on December 22, 1999, which was rescheduled to

-5-

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

January 6, 2000 and so confirmed by Sparta's counsel's letter of December 21, 1999, copy attached as Exhibit "D". Also on December 21, 1999, Sparta's counsel wrote Rupari's counsel advising that Sparta had terminated the Supply Agreement, copy attached as Exhibit "E".

Without notice to Rupari, the following day, December 22, 1999, before the ADR scheduled meeting date, Sparta filed suit against Rupari in the United States District Court, District of Minnesota. A copy of the Complaint is attached as Exhibit "F". The Complaint was served on Rupari December 27, 1999. As of the time that lawsuit was filed and the Complaint served, ADR had been scheduled, but had not yet occurred.

On January 6, 2000, fifteen (15) days after Sparta had filed suit, an attempt to conduct ADR by telephone conference call was initiated. At the commencement of the telephone conference Rupari inquired whether Sparta intended to discuss a resolution and settlement of the issues in dispute, to which Sparta responded that they did not. As a result, the ADR conference call was terminated.

Sparta's Complaint seeks damages for breach of contract (Count I) and unjust enrichment (Count II).

In response to the Sparta Complaint, Rupari filed its notice of motion and motion to dismiss, together with Affidavits of R. Christopher Sur and Robert Mintz and supporting memorandum, attached as Composite Exhibit "G". The motion seeks dismissal because of (a) failure to conduct ADR, a condition precedent to litigation, and (b) lack of jurisdiction over Rupari. Sparta's responsive memorandum is not due until February 18, 2000 and Rupari has

-6-

seven (7) days to file a reply, after which the motion will be set for hearing in Minnesota District Court.[1]

On January 10, 2000, Rupari filed the instant lawsuit in the Circuit Court in and for Broward County, Florida, seeking damages for (a) breach of implied warranty, and (b) fraud. Rupari believes this lawsuit was removed to this Court on February 7, 2000.[2]

## ARGUMENT

Plaintiff asserts that Defendant's motion to dismiss based on the First-Filed Rule is without merit and should be denied because: (1) Sparta's Minnesota District Court lawsuit was premature, as it failed to meet the contractual condition precedent requirement to conduct alternative dispute resolution prior to any attempt to litigate; (2) the Minnesota District Court lacks jurisdiction over Rupari; (3) Sparta's bad faith and unfair dealings dictate that the motion should be denied and this case remain in the Southern District of Florida venue; (4) while Rupari's motion to dismiss is pending in the Minnesota Court, Rupari's claims asserted in this lawsuit are not required to be asserted in the Minnesota case; and (5) Plaintiff's claims are not based upon the contract or upon unjust enrichment claims asserted by Sparta and should not be considered to arise out of the same

---

[1]Not less than sixteen (16) days after briefs are filed.

[2]As of the time this Memorandum was prepared, Rupari has not received a notice of removal or any other pleadings on papers reflecting removal, other than this Court's February 8, 2000 order and, on February 11, 2000, received Defendant's Motion to Transfer. Based upon a telephone call with the Circuit Court Clerk's office, Rupari's counsel was advised that removal occurred on February 7, 2000.

-7-

CASE NO. 00-6188-CIV-DIMITROULEAS

transaction or occurrence to compel Rupari's claims be pled in the Minnesota case.[3]

**A.**    **Minnesota Suit Improperly Filed As The Condition Precedent To Filing Had Not Occurred.**

Sparta's lawsuit is predicated upon the terms and provisions of the Supply Agreement. Sparta must live or die by these terms and conditions.    Sparta cannot pick and choose which portions of the Agreement it wishes to observe and enforce.

Paragraph 13.1 of the Agreement unequivocally requires the parties to engage in good faith negotiations prior to filing suit. Sparta's conduct and filing of the Minnesota case clearly violate both conditions of this paragraph. Sparta did not negotiate in good faith and instituted legal action without having first conducted ADR.

The substance of the Supply Agreement falls under the Uniform Commercial Code which provides in Section 1-203 that: "Every contract and duty within the code imposes an obligation of good faith in its performance or enforcement." See Florida Statutes §671.203. This duty of good faith and fair dealing is also expressed under common law and when the Code might not apply to a contract. See First Texas Savings Assoc. v. Comprop Investment Properties Ltd., 752 F.Supp. 1568 (M.D. Fla. 1990); Burger King Corp. v. Weaver, 798 F.Supp. 684 (S.D. Fla. 1992); Duffield v. First Interstate Bank of Denver, N.A., 13 F.3d 1403 (10th Cir. 1993); Conoco, Inc. v. Inman Oil Co., 774 F.2d 895 (8th Cir. 1985); Reid v. Key Bank of Southern Maine, 821

---

[3]In its memorandum supporting its motion to dismiss filed in the Minnesota case, Rupari has already addressed many of these issues. That memorandum is attached hereto as Composite Exhibit "F". Rupari by this reference incorporates those arguments in this Memorandum.

-8-

F.2d 9 (1ʳ Cir. 1987); First Nationwide Bank v. Florida Software Services, Inc., 770 F.Supp. 1537 (M.D. Fla. 1991). Even when a contract term promotes the self-interest of one party, the duty to act in good faith limits that party's ability to act contrary to the reasonable contract expectations of the other party. Travelers Int'l v. Trans World Airlines, Inc., 41 F.3d 1570 (2ⁿᵈ Cir. 1994).

A condition precedent must be performed before a right can accrue to enforce an obligation. Such a condition may relate to liability under a contract. First Texas Sav. Ass'n v. Comprop Inv. Properties, Ltd., 752 F.Supp. 1568, 1573 (M.D. Fla. 1990). Contractual provisions constituting conditions precedent to litigation are enforced by the courts. This policy is evidenced by the Rule 9(c), Federal Rules of Civil Procedure, concerning pleading conditions precedent. Sparta's Minnesota complaint does not comply with this Rule.

In Wilson, Inc. v. Post-Tensioned Structures, 522 So.2d 79 (Fla. 3rd D.C.A. 1988), the court dismissed the lawsuit as premature upon finding the plaintiff failed to perform a condition precedent in the contract. See also Monsour v. Balk, A.I.A., P.A., 705 So.2d 968, 970 (Fla. 2nd D.C.A. 1988), wherein the court held ". . . a party to a contract may not 'flagrantly disregard' the arbitration provision and file suit."; See also DeValk Lincoln Mercury, Inc. v. Ford Motor Company, 811 F.2d 326, 336 (7ᵗʰ Cir. 1987) (Failure to follow contract's mediation clause was condition precedent that barred plaintiff's lawsuit); Duckworth v. Plant, 697 So.2d 1257, 1258-9 (Fla. 5ᵗʰ D.C.A. 1997) (motion to dismiss granted where contract sued upon contained requirement to first arbitrate and raising other issues in the motion to dismiss did not waive right

-9-

to enforce arbitration provision); Mancini v. Personalized Air Conditioning & Heating, Inc., 702 So.2d 1376 (Fla. 4th D.C.A. 1997) (failure to give statutory notice requirement prior to suit required granting of motion to dismiss).

In SEMCO v. Ellicott Machine Corporation International, 1999 WL 493278 (E.D. La.), the failure to observe a contract provision requiring mediation prior to the institution of litigation or arbitration came before the court on plaintiff's motion to enjoin pending arbitration. The court determined mediation was a condition precedent under the parties' contract and granted the motion to enjoin arbitration.

In Bill Call Ford, Inc. v. Ford Motor Company, 830 F.Supp. 1045, 1053 (N.D. Ohio 1993), the court found failure to perform a contract requirement to mediate to be a condition precedent which barred plaintiff's claim.

Rupari was entitled to expect Sparta to observe the parties' contractual obligation to negotiate in good faith through the ADR procedure before submitting their dispute to the court. Sparta's refusal to conduct alternative dispute resolution before filing suit and thereafter making a mockery of mediation is clear evidence of failure to observe the condition precedent and of bad faith supporting Rupari's motion to dismiss the Minnesota case. Dismissal of the Minnesota case will render moot Sparta's motions to dismiss and transfer.

B.    **Minnesota Court Lacks Jurisdiction Over Rupari.**

Rupari is a Florida corporation with its principal place of business in Deerfield Beach, Florida. Rupari has no offices or employees in Minnesota and is not qualified to, and does not,

-10-

CASE NO. 00-6188-CIV-DIMITROULEAS

do business in that state. Rupari's only contact with Minnesota was (1) Rupari's president paid a courtesy visit for one day to Minnesota to be introduced at Sparta's annual shareholders meeting, and (2) after dispute arose concerning the defective Product, Rupari accepted Sparta's invitation to inspect Sparta's plant in Minnesota. These two events do not meet the requisite "minimum contacts" test to afford the Minnesota court jurisdiction over Rupari.

The Eighth Circuit has established two criteria for resolving a non-resident jurisdictional issue: (1) the facts must satisfy requirements of Minnesota's long-arm statute; and (2) exercise of personal jurisdiction must not violate notions of due process. Digi-Tel Holdings v. Pro-Teq Telecommunications, 89 F.3d 519 (8th Cir. 1996).

To satisfy "minimum contact" requirements, Rupari's contacts with Minnesota must be more than "random", "fortuitous" or "attenuated". Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). To meet this jurisdictional requirement it must be shown that there exists some act by which Rupari purposefully availed itself of the privilege of conducting activities within Minnesota, thus invoking the benefits and protections of Minnesota law. Burger King Corp., supra.

Sparta must meet a five-factor test applied by the Eighth Circuit as discussed in Digi-Tel Holdings, supra. Sparta has not satisfied this requirement. See Rupari's Memorandum attached as Exhibit "G".

The facts establish that the "minimum contacts' criteria is only satisfied in Florida and not in Minnesota. Sparta traveled to Rupari's office in Florida on several occasions to solicit and

-11-

CASE NO. 00-6188-CIV-DIMITROULEAS

negotiate a business relationship. The parties executed a letter of intent in Rupari's Florida office.

Rupari executed the Supply Agreement in Florida. Rupari's books and records relating to its

claims and its officer and employee witnesses are located in Florida. Except for Sparta's officers

and employees, Rupari is unaware of any potential witness located in Minnesota. These facts fully

support Sparta's minimum contacts in Florida for jurisdiction over Sparta by courts in Florida.

Significantly, Sparta does not dispute Florida jurisdiction.

To the contrary, Rupari's two visits to Minnesota, at best, are too attenuated and tangential

to qualify for Minnesota jurisdiction. On stronger facts than Sparta can assert, the court in

Zumbro, Inc. v. California Natural Products, 861 F.Supp. 773, 779-80 (D. Minn. 1994), found

insufficient "minimum contacts" for personal jurisdiction over a defendant in Minnesota.

Additionally, Rule 13(a) dealing with compulsory counterclaims provides:

> But the pleader need not state the claim if . . . (2) the opposing
> party brought suit upon the claim by attachment or other process by
> which the court did not acquire jurisdiction to render a personal
> judgment on the claim, and the pleader is not stating any
> counterclaim under this Rule 13.

Rupari has contested the Minnesota Court's personal jurisdiction by pending motion to

dismiss. Unless the Minnesota Court denies Rupari's motion, the above cited portion of Rule 13

applies to permit the maintenance of Rupari's lawsuit in Florida.

Plaintiff, Rupari, submits that there is a lack of personal jurisdiction over Rupari in the

Minnesota case and that Rupari's motion to dismiss should be granted by the United States District

Court in Minnesota. Such a dismissal will render moot the First-Filed Rule and transfer issue.

-12-

CASE NO. 00-6188-CIV-DIMITROULEAS

C.    **Sparta Should Not Be Rewarded For Acts Of Bad Faith.**

Both the Uniform Commercial Code and common law incorporate good faith and fair dealing into the business relationship between the parties. See U.C.C. §1-203; First Texas Sav. Ass'n v. Comprop Inv. Properties, Ltd., supra, at 1572, 1573.

When Sparta realized it was apparently unable to correct the defect in the Product, it set upon a scheme to lull Rupari into believing that the problem would be solved and disputes between the parties would be amicably resolved.

Although Sparta's attorneys made demand for payment of the defective Product and purportedly offered to set the alternative dispute resolution procedures in motion (See David D. Meyer's November 18, 199 letter, Exhibit "B"), Sparta advised Rupari that disputed matters would be resolved and its attorney's letter was mere posturing. Rupari's attorneys' response to this letter (Exhibit "C") was Rupari's expression of a genuine desire to resolve the dispute as amicably as possible. Sparta's attorney's December 21, 1999 letter (Exhibit "D"), confirming a rescheduling of the ADR conference to January 6, 2000, gave Rupari further confidence of Sparta's purported good faith in attempting to reach a negotiated settlement. Sparta's attorney wrote: "Sparta is hopeful that a solution to this dispute can be negotiated. In that spirit, we look forward to speaking with you on January 6, 2000." (Emphasis supplied) (Exhibit "D").

What Sparta secreted from Rupari was that Sparta had no intention of mediating the dispute in good faith and was preparing to, and did, file its Minnesota lawsuit the following day, December 22, 1999. Rupari was totally unaware of the existence of the lawsuit until served.

-13-

CASE NO. 00-6188-CIV-DIMITROULEAS

It is obvious that Sparta misled Rupari to believe that their disputes could be amicably resolved and gave mere lip service to paragraph 13.1 of the Supply Agreement requiring ADR as a condition precedent to litigation. The purpose of this bad faith scheme was to put Rupari at ease in order to create and win a race to the courthouse and select Minnesota venue.

The facts of <u>Southmark Corporation v. PSI, Inc.</u>, 727 F.Supp. 1060 (S.D. Miss. 1989) are strikingly similar to the case at bar. In that case a dispute arose between Southmark and PSI concerning the validity of their contract. When a meeting of the parties failed to achieve a settlement, PSI's attorney wrote Southmark's president that Southmark would have until August 4, 1989 to agree to PSI's proposed settlement terms. However, on July 20, 1989, PSI filed suit in the United States District Court, District of Nebraska, without any prior notice to Southmark. On July 31, 1989, Southmark sued PSI in the United States District Court, Southern District of Mississippi. Southmark's motion to dismiss or to transfer the case to the Southern District of Mississippi was denied by the Nebraska Court.

Acknowledging the First-Filed Rule, the Mississippi Court held that the application of this Rule would not be justified and cited <u>Koch Engineering Co. v. Monsanto Co.</u>, 621 F.Supp. 1204 (E.D. Mo. 1985) for the proposition that the first to file rule is not absolute. It approved the <u>Koch</u> court's ruling that the First-Filed Rule not be used to condone a party's bad faith attempt to win a race to the courthouse.

The <u>Southmark</u> court also quoted <u>Columbia Pictures Indus., Inc. v. Schneider</u>, 435 F.Supp. 742, 274 (S.D. N.Y. 1977), Aff'd 573 F.2d 1288 (2nd Cir. 1978) with approval:

-14-

> "it would create disincentives to responsible litigation if Columbia [the plaintiff in the first filed case] were allowed to prevent Schneider et al. [the plaintiff in the second filed case] from litigating in the forum of their choice by having won the race to the courthouse by six days, . . .[p]otential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing . . ."

Finding PSI took advantage of Southmark's good faith settlement efforts through deceptive maneuvers in order to get a head start in the courthouse race, the Southmark court joined other federal courts in disapproving this tactic and exercised its discretion not to dismiss the second filed case.[4]

The facts of the case at bar are so similar to Southmark and the cases cited therein that justice requires that this Court achieve a similar result. Rupari respectfully submits that Sparta's motion to dismiss should be denied and this case should proceed in the Florida venue.

D.     **It is Improper to Assert Rupari's Claim In Minnesota Lawsuit.**

The only reason to either dismiss or transfer the case at bar would be to require Rupari to assert its claims as a counterclaim in the Minnesota case. The present status of the Minnesota case dictates that it would be inappropriate for Rupari to assert its claim in the Minnesota case. This issue is clearly explained in the comment to Rule 13, Federal Rules of Civil Procedure, found in Federal Civil Rules Handbook by Baicker-McKee, Janssen & Corr:

---

[4]This court also inferred that, had the Nebraska District Court not denied Southmark's motions to dismiss, transfer or stay, the Mississippi court would have considered enjoining the Nebraska litigation.

-15-

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

> Even if a counterclaim arises from the same transaction or occurrence as a plaintiff's claim, Rule 13(a) provides that it does not become a compulsory counterclaim until the time when the party holding the counterclaim is required to file a responsive pleading. Thus, if a defendant initially filed a motion to dismiss under Rule 12(b), that rule provides that no pleading need be filed until the court decides the Rule 12(b) motion. If the court granted the motion to dismiss, the defendant never had an obligation to file a responsive pleading. In that circumstance, any claim the defendant had against the plaintiff would not be deemed a compulsory counterclaim, and would be preserved for assertion in subsequent litigation

See Selingson v. Plum Tree, Inc., 361 F.Supp. 748 (E.D. Pa. 1973) (motion to dismiss first suit under advisement when defendant brought second suit, thereafter motion to dismiss first suit granted, hence no counterclaim required in first suit and no bar to second suit); Martino v. McDonald's System, Inc., 598 F.2d 1079, (cert. den. 7th Cir. 1979) (Rule 12 motion suspends filing of a pleading such as answer or counterclaim).

In Horn & Hardart Company v. National Railroad Passenger Corporation, 659 F.Supp. 1258 (D.C. 1987), National Railroad Passenger Corporation ("Amtrack") moved to dismiss Horn & Hardant's complaint or alternatively for summary judgment, without having filed an answer or counterclaim. This motion was granted. Thereafter, Amtrack sought further relief after judgment in its favor. Among Horn & Hardant's defenses was the claim that Amtrack's claim for further relief should have been alleged as a compulsory counterclaim in the initial phase of the lawsuit. The District Court followed the uniform holding of other courts that no pleading was required unless the motion to dismiss was denied. In so ruling, the court approved the ruling of Lawhorn

-16-

v. Atlantic Refining Co., 299 F.2d 353, 357 (5th Cir. 1962)[5]:

> [i]f one hauled into court as a defendant has a claim but the adversary plaintiff has not, the nominal defendant ought to be allowed to name the time and place to assert it. He should not be [f]orced into court by a would-be plaintiff and forced to assert, or lose, a claim which he may choose not to litigate at all, or which he may choose to assert at another time and place.

The Lawhorn court further reasoned at page 356:

> When Atlantic's motion to dismiss was successful, it was a judicial determination that Lawhorn had no claim upon which relief could be granted. If there was no claim, no counterclaim was required.

See also United States v. Snider, 779 F.2d 1151 (6th Cir. 1985).

The status of the Minnesota case is that Rupari's motion to dismiss is pending, Sparta has not yet responded to this motion and a hearing before the court has not yet been scheduled.

As it is now structured, it would be inappropriate for Rupari to file a counterclaim in the Minnesota litigation. In fact, if the Minnesota court grants Rupari's motion to dismiss, as Rupari believes it should, there is not a case in Minnesota to adjudicate Rupari's claims.

For these reasons, it would defeat the interests of justice and the rights of the parties to either dismiss Rupari's lawsuit or transfer it to the Minnesota District Court. Sparta's motion to dismiss should be denied.

E.    **Rupari's Claims are Different Than Sparta's Minnesota Claims.**

Sparta's Minnesota complaint claims breach of the Supply Agreement and unjust enrichment. Rupari's complaint claims breach of warranty, a Uniform Commercial Code claim,

---

[5]Fifth Circuit decisions through September 30, 1981 are binding upon the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

-17-

CASE NO. 00-6188-CIV-DIMITROULEAS

and fraudulent misrepresentation which induced Rupari to purchase the Product from Sparta.

Although Sparta's claims depend upon the provisions of the Supply Agreement (for breach of contract) or a contract implied in fact (unjust enrichment), Rupari's claims do not. Rupari's claims arise under provisions of the Uniform Commercial Code and common law. Sparta also alleges in its complaint that it voluntarily terminated the contract. Moreover, Sparta claims contract damages, but Rupari does not. Different evidence is necessary to support each party's claims.

Rupari submits that its claims are not compulsory and need not be joined with Sparta's Minnesota lawsuit. See Pension Fund of Christian Church v. Younge, 74 FRD 155 (E.D. Mo. 1977) (counterclaim for fraudulent foreclosure sale not compulsory in mortgage noteholder's suit to recover deficiency after foreclosure).

## CONCLUSION

Although Defendant, Sparta, seeks dismissal or transfer of this case, Sparta curiously fails to inform the Court that the Supply Agreement, the substance of Sparta's claim, requires alternative dispute resolution as a condition precedent to instituting litigation. This requirement is fatal to Sparta's argument because (a) Sparta failed to comply with this condition (and did not plead compliance in its Minnesota complaint); and (b) the ADR provision gave Sparta the ammunition to deceive Rupari and act in bad faith to create and win a race to the courthouse. Moreover, Sparta failed to advise this Court that Rupari's motion to dismiss the Minnesota lawsuit was pending. Among other issues, Rupari's motion to dismiss tests the Minnesota Court's

-18-

personal jurisdiction over Rupari.  The pendency of this motion makes it inappropriate to either dismiss or transfer the case at bar.

For these reasons, as more specifically addressed above in this Memorandum, Plaintiff, Rupari, respectfully submits that Defendant, Sparta's, motion to dismiss should be denied and the instant case should be litigated in the Florida venue.

Respectfully submitted

**SCHATZMAN & SCHATZMAN, P.A.**
Attorneys for Plaintiff
Suite 700, Dadeland Towers North
9200 South Dadeland Boulevard
Miami, Florida 33156
Telephone:    (305) 670-6000
Facsimile:    (305) 670-6068

By:_____
      ARNOLD D. SCHATZMAN
      Fla. Bar No.070862

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered via U.S. mail this 17th day of February, 2000 to Michael C. Rotunno, Esquire at Marlow, Connell, Valerius, Abrams, Adler & Newman, Post Office Box 339075, Miami, Florida 33233-9075.

**SCHATZMAN & SCHATZMAN, P.A.**
Suite 700, Dadeland Towers North
9200 South Dadeland Boulevard
Miami, Florida 33156

By:_____
      ARNOLD D. SCHATZMAN

-19-

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

## EXHIBIT INDEX

| Description | Exhibit |
|---|---|
| Supply Agreement Dated January 14, 1999 | A |
| David D. Meyer Letter to Robert Mintz, Rupari, Dated November 18, 1999 | B |
| Sheldon J. Burnett Letter to David D. Meyer, Dated November 24, 1999 | C |
| David D. Meyer Letter to Sheldon Burnett, Dated December 21, 1999 | D |
| David D. Meyer Letter to Sheldon Burnett, Dated December 21, 1999 | E |
| Complaint Filed by Sparta In U.S. District Court, District of Minnesota | F |
| Rupari's Notice of Motion and Motion to Dismiss; Affidavit of Robert Mintz; Affidavit of R. Christopher Sur; Rupari Food Services' Memorandum In Support of Motion to Dismiss; Steven J. Quam letter dated February 7, 2000 confirming Sparta's time to respond to Rupari's Motion to Dismiss (U.S. District Court, District of Minnesota) | Composite G |

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE