UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6188-CIV-DIMITROULEAS

RUPARI FOOD SERVICES, INC.,                    Magistrate Judge Johnson
a Florida corporation,

       Plaintiff,

vs.

SPARTA FOODS, INC.,
a Minnesota corporation,

       Defendant.
_____/

### RUPARI'S REPLY TO SPARTA'S MEMORANDUM RESPONDING TO RUPARI'S MEMORANDA OPPOSING TRANSFER OR DISMISSAL

COMES NOW the Plaintiff, RUPARI FOOD SERVICES, INC. ("Rupari"), by and through its undersigned attorneys and replies to the Defendant, SPARTA FOODS, INC.'s ("Sparta") memorandum responding to Rupari's memoranda opposing transfer and dismissal, and says:

### POINTS AT ISSUE

Much of Sparta's argument is misdirected and fails to address the salient issues as presented and argued by Rupari. Sparta further has incorrectly described the status of the Minnesota District Court case. Rupari submits the following:

1.    Subject matter jurisdiction of the Minnesota Court is contested by Rupari's pending motion to dismiss, i.e. Sparta failed to perform alternative dispute resolution ("ADR") prior to filling the Minnesota lawsuit, a condition precedent to litigation.

2.    The Minnesota Court's personal jurisdiction over Rupari is also disputed by Rupari's pending motion to dismiss.

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

CASE NO. 00-6188-CIV-DIMITROULEAS

3.    Rupari is not so presumptuous as to suggest that this Court should decide the jurisdictional issues pending before the Minnesota Court.  Rupari simply argues that, given the present uncertainty of jurisdiction in Minnesota, this status ought to be considered by this Court as a factor when considering how the First Filed Rule should be applied and whether transfer is appropriate.

4.    The issues before this Court are not identical to the issues raised by Rupari in Minnesota.  The Minnesota Court has been called upon to decide the issues of subject matter and personal jurisdiction.  There is no jurisdictional issue raised in this case at bar.  This Court has been called upon to decide the issues of the First Filed Rule, Transfer and Remand.  Further, the issues concerning the merits are not identical and are based upon different legal principles.

5.    The issues before this Court do not concern the merits of either parties' claims.  To argue such transactional facts, especially those which appear to be in dispute, are not helpful to resolving the issues to be addressed by this Court.[1]

## FACTS

The following are facts Rupari submits are incorrectly stated by Sparta:

1.    Rupari did not pursue a relationship with Sparta.  Sparta sought to become a distributor of Rupari's *Mighty Mouse* food products.  Rupari was unaware of Sparta's intention to establish a business relationship with Rupari concerning chips/cheese and chips/salsa products

---

[1]Although Rupari does not believe such facts to be relevant to pending issues, Rupari is compelled to briefly set the record straight as to those incorrectly stated facts appearing in Sparta's Memorandum.

-2-

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

CASE NO. 00-6188-CIV-DIMITROULEAS

until Sparta met with Rupari at Rupari's Deerfield Beach, Florida office, purportedly to discuss Rupari's unrelated *Mighty Mouse* products. At a second meeting at Rupari's Florida office, Sparta prepared and presented a letter of intent to Rupari which was executed in Florida. See Second Affidavit of Robert Mintz, paragraphs 3 and 4 attached to Robert Mintz's Affidavit filed in this case with this Memorandum.

2.     Products ordered March through September, 1999, were primarily test orders for Rupari to become familiar with the chips/cheese and chips/salsa product, to be used as a tool to attempt to create a market and customer interest and to provide product to customers to test the product with the customer's respective customers. See Robert Mintz Affidavit filed in this case with this Memorandum, paragraph 3.

3.     The product delivered by Sparta to Rupari is packaged in boxes and sealed with shrink wrap. As packaged by Sparta, it cannot be inspected until opened by the consumer customer. The packaged product was delivered to Rupari's customers with no opportunity to examine the food product inside the packaging. Since the product defect concerned quality of the food in a sealed cup inside the sealed box package, there was no way for Rupari to visually discover the defect. See Robert Mintz Affidavit filed in this case with this Memorandum, paragraphs 4, 5 and 6. Paragraph 6.2 of the Supply Agreement provides seven (7) days for Rupari to object only to product defects "discoverable upon a visual inspection," otherwise, only upon Rupari's or its customer's reasonable opportunity to discover. There are no limitations for warranty breaches. Rupari first became aware of defects when its customers began complaining

-3-

CASE NO. 00-6188-CIV-DIMITROULEAS

in August, 1999 and notified Sparta promptly. See Robert Mintz's Affidavit filed in this case with this Memorandum, paragraph 7.

4.    Sparta did not ask Rupari to identify Rupari's complaining customers. Most, if not all, of these customers complained about product defects. Sparta did not provide Rupari with lot numbers for the product so that Rupari could not identify the same to Sparta. See Robert Mintz Affidavit filed in this case with this Memorandum, paragraph 7. Moreover, the identity of Rupari's customers or lot numbers would not correct the product defect.

## ARGUMENT

### FIRST FILED RULE

Although Sparta defines the First Filed Rule, Sparta fails to assert how or why this Rule should be applied in this case. Sparta simply argues that Rupari's complaint could be treated as a counterclaim - this argument does not resolve the First Filed Rule issue. Sparta cites no legal authority that would apply the Rule to the facts of this case. Without an explanation of why the facts of the case sub judice require application of the Rule, Sparta simply argues law in a vacuum.

Significantly, Sparta argues on page 4 of its Memorandum: "The dispute between the SPARTA and RUPARI arises from their Agreement . . . The parties' relationship is governed by the Agreement." (Emphasis supplied). Accepting Sparta's argument as an admission, Sparta cannot deny that paragraph 13.1 of the Supply Agreement requires ADR as a condition precedent to filing suit, which Sparta failed to follow, resulting in Sparta's Minnesota case being improperly filed. Hence, the case at bar is the only properly filed case to which the First Filed Rule should apply. Sparta's attorney, Meyer's, December 21, 1999 letter stating ". . . my agreement to

-4-

reschedule the telephone conference [ADR] did not waive or extend any time limitations that may be applicable to this dispute . . ."[2] was really an attempt to secret Sparta's true intent to surreptitiously file their complaint the next day - especially when Meyer further states in the letter "Sparta is hopeful that a solution to this dispute can be negotiated." (Emphasis supplied). Sparta was not free to rewrite the parties' agreement to its liking and ignore a negotiated and agreed provision.

In Schwendiman Partners, LLC v. Hurt, 71 F.Supp.2d 983, 987-8 (D. Neb. 1999), the court dismissed the first filed case under the bad faith exception to the Rule, applying the "red flags" established by the Eighth Circuit and the established public policy that: "The Court should encourage good faith settlement negotiations rather than rushing to the courthouse, and '[a]pplication of the first-filed rule should not penalize parties for their efforts to settle matters out of court.' Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System, 915 F.Supp. 131, 144 (W.D. Mo. 1996)." Id. at 988.

Sparta incorrectly cites Southmark Corp. v. PSI, Inc., 727 F.Supp. 1062 (S.D. Miss. 1989) for the proposition that a second filed suit should be dismissed or stayed until resolution of the first filed action. In fact, on facts similar to the case at bar, the Southmark court refused to follow the First Filed Rule because of the first case plaintiff's bad faith and race to the courthouse.

─────────────────────

[2]It is ambiguous and unclear what "time limitations" Meyer refers to. If bad faith was not a motive, Meyer would have clearly identified what time limitations he referred to. Since also on December 21, 1999, Meyer sent a second letter advising Sparta was unilaterally terminating the Supply Agreement, it would be reasonable to assume that "time limitations" somehow referred to the termination and was unrelated to Sparta's obligation to mediate in good faith without the threat of a lawsuit being filed by Sparta.

That court suggested, but for the first filed court's denial of a motion to dismiss, the Southmark court would have been inclined to stay the first filed case.

Sparta further attempts to distinguish Southmark because it involved a declaratory decree action. Southmark and Rupari's other cited cases were not decided because declaratory relief was sought.[3] To the contrary, the First Filed Rule was not applied because of the first filer's conduct and bad faith. It is noteworthy that most of Sparta's cases also seek declaratory relief.[4]

Southmark cannot be distinguished because the first filed case sought declaratory relief. The holding of Southmark was predicated upon the first filed plaintiff's bad faith conduct, similar in nature to that perpetrated upon Rupari by Sparta. Moreover, Sparta does not quarrel with Columbia Pictures Indus., Inc. v. Schneider, 435 F.Supp. 742 (S.D. N.Y. 1977), aff'd, 573 F.2d 1288 (2nd Cir. 1978) or Koch Engineering Co. V. Monsanto Co., 621 F.Supp. 1204 (E.D. Mo. 1985), cases upon which the Southmark court relied in reaching its decision.

As to Sparta's cited cases, all are distinguishable: Supreme International Corp. v. Anhauser-Busch, Inc., 972 F.Supp. 604 (S.D. Fla 1997) did not involve a race to the courthouse; Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169 (11th Cir. 1982) involved a first filed case remanded to state court which was litigated on parallel tracks for three years and

_____

[3]Because of bad faith, the Southmark court did not deem it necessary to even consider whether the second filer's claim would be an appropriate counterclaim in the first filed case.

[4]See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S. Ct. 219, 96 L.Ed. 200 (1952); Allstate Ins. v. Clohessey, 9 F.Supp.2d 1314 (M.D. Fla. 1998); Midwest Motor Express, Inc. v. Central States, S.E., 70 F.3d 1014 (8th Cir. 1995); Chiron Corp. v. Advanced ChemTech, Inc., 869 F.Supp. 800 (N.D. Cal. 1994); Brower v. Flint Ink Corp., 865 F.Supp. 564 (N.D. Iowa 1994).

-6-

CASE NO. 00-6188-CIV-DIMITROULEAS

set for trial within a week in state court; Cadle Company v. Whataburger of Alice, Inc., 174 F.3d

599 (5th Cir. 1999) approved transfer under the First Filed Rule because personal jurisdiction was

not an issue; Brower v. Flint Ink Corporation, 865 F.Supp. 564, 569 (N.D. Iowa 1994)

acknowledged that bad faith, such as Sparta perpetrated, was an exception to the application of

the First Filed Rule; Berisford Capital Corp. v. Central States, Southeast and Southwest Areas

Pension Fund, 677 F.Supp. 220 (S.D. N.Y. 1988) is an ERISA case were jurisdiction is not an

issue.

In Midwest Motor Express, Inc. v. Central States Southeast, 70 F.3d 1014, 1017 (8th Cir.

1995), cited by Sparta, the Eighth Circuit stated it would have been more inclined to apply the

exception to the First Filed Rule if it found fad faith similar to Sparta's conduct.

Sparta's assertion of its version of facts it claims supports its claim on the merits does not

explain or excuse its bad faith run to the courthouse.  Rupari will raise its denial and defenses to

these allegations directed to the merits at the time an appropriate pleading is required.  The cases

cited by Rupari in its initial Memorandum address the First Filed Rule and transfer issues and

dictates that, even if the Minnesota case is ultimately determined to be the first filed case, the Rule

should not be applied to dismiss on transfer the case at bar.

## TRANSFER

In addition to Sparta's bad faith, Rupari has argued in its initial Memorandum that this case

should not be transferred since the Minnesota court's jurisdictional issues are still pending and

unsettled.  Rupari relies on the citations in its earlier filed Memoranda as support for its position.

As stated in Midwest Motor Express, Inc. v. Central States S.E., 70 F.3d 1014, 1017 (8th Cir.

-7-

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

CASE NO. 00-6188-CIV-DIMITROULEAS

1995), cited by Sparta, the court's jurisdiction is dependent upon subject matter and status of the parties, not upon Sparta's argument of the merits of its case.

Regardless of Sparta's interpretation of Cessna Aircraft Co. v. Brown, 348 F2d 689 (10th Cir. 1965), this case stands for the proposition that transfer is inappropriate while jurisdictional issues are not resolved.

Although Sparta would like to avoid the ruling of Muller v. Walt Disney Productions, 822 F.Supp. 1033 (S.D. N.Y. 1993), Sparta cannot avoid its holdings that the existence of related litigation in another district is not the controlling factor for transfer; that forum shopping by the first case and the jurisdictional doubts pending in the first case are reasons not to transfer based upon the First Filed Rule.

Additionally, recognizing that it cannot meet the test of forum convenience for transfer, Sparta concedes at page 15 of its Memorandum that "convenience of the parties is a wash". Although Rupari submits that convenience favors Florida, even at a wash, the law favors the Florida forum chosen by Rupari and where Rupari is incorporated and has its principal place of business. Houk v. Kimberly-Clark Corporation, 613 F.Supp. 923 (W.D. Mo. 1985).

Attached hereto is a copy of Rupari's reply memorandum with exhibits filed in the Minnesota case in support of its motion to dismiss.

## CONCLUSION

For reasons stated in this and Rupari's initial Memoranda, Rupari respectfully submits that

-8-

CASE NO. 00-6188-CIV-DIMITROULEAS

this case should not be dismissed or transferred and should most appropriately be litigated in the

Florida venue.

Respectfully submitted,

SCHATZMAN & SCHATZMAN, P.A.
Attorneys for Plaintiff
Suite 700 Dadeland Towers North
9200 South Dadeland Boulevard
Miami, Florida 33156
Telephone:  (305) 670-6000
Facsimile:  (305) 670-6068

By:_____
ARNOLD D. SCHATZMAN
Fla. Bar No.070862

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered via U.S.

mail this 10th day of March, 2000 to Michael C. Rotunno, Esquire at Marlow, Connell, Valerius,

Abrams, Adler & Newman, Sparta Counsel, Post Office Box 339075, Miami, Florida 33233-

9075.

SCHATZMAN & SCHATZMAN, P.A.
Attorneys for Plaintiff
Suite 700 Dadeland Towers North
9200 South Dadeland Boulevard
Miami, Florida 33156
Telephone:  (305) 670-6000
Facsimile:  (305) 670-6068

By:_____
ARNOLD D. SCHATZMAN
Fla. Bar No.070862

-9-

SCHATZMAN & SCHATZMAN, P.A.
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

CASE NO. 00-6188-CIV-DIMITROULEAS

## EXHIBIT INDEX

**Exhibit**

A          Affidavit of Robert Mintz

B          Rupari's Reply Memorandum in Support of Motion to Dismiss (filed in the
           Minnesota case)

**SCHATZMAN & SCHATZMAN, P.A.**
9200 SOUTH DADELAND BOULEVARD • SUITE 700 • MIAMI, FLORIDA 33156

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6188-CIV-DIMITROULEAS

RUPARI FOOD SERVICES, INC.,                    Magistrate Judge Johnson

        Plaintiff,

vs.

SPARTA FOODS, INC.,
A Minnesota corporation,

        Defendant.
_____/

## AFFIDAVIT OF ROBERT MINTZ

STATE OF FLORIDA        )
                       ) SS:
COUNTY OF ___BROWARD___  )

BEFORE ME, the undersigned authority, personally appeared ROBERT MINTZ, who, first being duly sworn deposes and says:

1.    Your Affiant is, and at all times relevant to this lawsuit was, the President of the Plaintiff, Rupari Food Services, Inc. ("Rupari"), and makes this Affidavit upon his personal knowledge.

2.    On January 19, 2000, Affiant made his affidavit which was subsequently filed in the lawsuit styled Sparta Foods, Inc. v. Rupari Food Services, Inc. pending in the United States District Court, District of Minnesota, Case No. 99-CIV-2041 (MJD/JGL) and on March 3, 2000 Affiant made his second affidavit which was also filed in said Minnesota lawsuit. Copies of these affidavits are attached hereto and by this reference are incorporated as a part of this affidavit. The facts, circumstances and events as stated in these attached affidavits are true and correct.

3.    Although it is true that Rupari ordered some of the chips/cheese and chips/salsa products which are the subject matter of this lawsuit (the "product"), these orders were placed

EXHIBIT____"A"____

primarily as test orders in order for Rupari to become familiar with the product, to attempt to create a market for the product, and to interest prospective customers in the product, and for customers to place sample orders in order for them to test their markets and the acceptability of the product with the public.

4.    Sparta Foods, Inc. ("Sparta") was the manufacturer and packager of the product. Sparta packaged the product in a box containing chips and a sealed cup containing either cheese or salsa. This box was then sealed with shrink wrap so that the contents of the box could not be inspected until opened by the ultimate consumer.

5.    Sparta delivered the product in the fully sealed box.

6.    Because Sparta delivered the product in seal boxes, Rupari could not inspect the product for defects and a visual inspection would not reveal any such defect. Rupari delivered the product to its customers with no knowledge that the product inside the packaging was defective.

7.    Rupari first became aware that the product was defective in August, 1999 when its customers so complained and promptly advised Sparta of this problem. Sparta never asked Rupari to identify any particular customer which was making complaints. Sparta knew who Rupari's customers and potential customers were and that Rupari was receiving complaints from most, if not all, of them. Sparta did not provide Rupari with lot numbers so that Rupari could not identify the defective product in that manner. However, the identity of Rupari's customers or lot numbers would not correct the defect. Sparta has never corrected the defect.

8.    Pursuant to paragraph 6.2 of the Supply Agreement, only problems which could be visually discovered required seven (7) days notice to Sparta. As stated above, the product

-2-

defect could not be visually discovered because of the sealed packaging until the packaging was opened by the end user. Rupari gave prompt and reasonable notice to Sparta upon Rupari's discovery of the problem as the same was required by the Supply Agreement. Further, no particular notice requirements are required in the Supply Agreement for warranty claims.

9.     Rupari's books and records relating to its dealings with Sparta and samples of the defective product are located at Rupari's principal place of business in Deerfield Beach, Florida. Rupari's officers and employees familiar with Rupari's dealings with Sparta and who Rupari anticipates will be witnesses in this case are located in South Florida. Other fact and/or expert witnesses Rupari anticipates it would use in this case are located either in Florida or in states other than Minnesota. Your Affiant is unaware of any witness Sparta would use in this case that is located in Minnesota, other than officers and/or employees of Sparta.

FURTHER AFFIANT SAYETH NOT.

_____
ROBERT MINTZ

**THE FOREGOING INSTRUMENT** was acknowledged before me this 9 th day of March, 2000, by ROBERT MINTZ, who is personally known to me, or who has produced his _____ as identification, and who did/did not take an oath.

_____
Notary Public, State of Florida at Large
My Commission Expires:

Jeannine M. Sugdinis
Commission # CC 765887
Expires SEP. 7, 2001
BONDED THRU
ATLANTIC BONDING CO., INC.

-3-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

Sparta Foods, Inc.,                         Court File No. 99-CV-2041
                                                    (MJD/JGL)
        Plaintiff,

vs.                                         **AFFIDAVIT OF ROBERT MINTZ**

Rupari Food Services, Inc.,

        Defendant.

---

STATE OF FLORIDA     )
                )ss.
COUNTY OF BROWARD    )

      I, Robert Mintz, being duly sworn on oath, depose and state as follows:

      1.     I am the President of Rupari Foods Services, Inc., located in Deerfield Beach,

Florida, and make this Affidavit in support of Rupari's motion to dismiss the Complaint in the

above-captioned action.

      2.     Rupari Food Services, Inc. ("Rupari") is a Florida corporation, which imports and

distributes food products.  Rupari does not maintain any offices, have any employees, or own any

property in Minnesota, nor does it solicit business or advertise in Minnesota.  Rupari is not

licensed to do business in Minnesota, and has no personnel or agents authorized to accept service

in Minnesota.

      3.     In January 1999, Rupari received a call from Sparta requesting a meeting with

Rupari in Florida.  Sparta had learned of Rupari through one of Rupari's brokers, who is located

in Phoenix, Arizona.  Rupari agreed to the meeting and, in January 1999, Sparta representatives

flew to Florida for a meeting with me and other representatives of Rupari.

4. At that meeting, Sparta's representatives stated that they wanted to do business with Rupari and proposed the idea of packaging certain chips/cheese and chips/salsa products and distributing these products in Florida and elsewhere under a brand name developed by Rupari. This was the first of numerous visits by Sparta representatives to Florida.

5. Approximately one month later, Sparta sent a draft Supply Agreement to me in Florida. I forwarded the draft agreement to a lawyer Rupari had retained in Florida.

6. Rupari's lawyer then negotiated changes to the Supply Agreement with Sparta's attorneys. A final version of the Agreement was not agreed upon until May 1999. In May, I signed the Supply Agreement in Florida.

7. I have been to Minnesota on two occasions. Prior to the signing of the Supply Agreement, Sparta requested that I attend its annual shareholders meeting to tout the upcoming Supply Agreement. I agreed to do so and was in Minnesota for one day. After Rupari raised concerns to Sparta about the defective product Sparta was shipping to Rupari, Sparta invited me and two of my employees to tour Sparta's plant in Minnesota, which we did in October 1999. These were the only two occasions that Rupari sent any representatives to Minnesota.

8.    Other than purchase orders, Rupari sent almost no correspondence to Sparta until September 1999, after Rupari became aware of the defective product that Sparta was supplying to Rupari.

FURTHER AFFIANT SAYETH NOT.

_____
Robert Mintz

Subscribed and sworn to before
me this _15_ day of January, 2000.

_____
Notary Public

63250

Jeannine M. Sugdinis
Commission # CC 765887
Expires SEP. 7, 2001
BONDED THRU
ATLANTIC BONDING CO., INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

Sparta Foods, Inc.,

             Plaintiff,

vs.

Rupari Food Services, Inc.,

             Defendant.

Court File No. 99-CV-2041
(MJD/JGL)

**SECOND AFFIDAVIT
OF ROBERT MINTZ**

---

STATE OF FLORIDA     )
                       )ss.
COUNTY OF BROWARD  )

I, Robert Mintz, being duly sworn on oath, depose and state as follows:

1.      I am the President of Rupari Foods Services, Inc. ("Rupari"), located in Deerfield Beach, Florida, and make this second Affidavit in support of Rupari's motion to dismiss the Complaint in the above-captioned action. I make this affidavit to respond to factually inaccurate statements in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, and in the supporting affidavits.

2.      Sparta Foods, Inc. ("Sparta") states that "Rupari also claims to be a national distributor of 'Plumrose' meats." Rupari is not and has not claimed to be a national distributor of Plumrose meats. Rupari does not distribute Plumrose meats at all.

3.      Sparta states that Rupari aggressively pursued a business relationship with Sparta, and suggests that Rupari invited Sparta to Florida to discuss the manufacture and marketing of the chips/cheese and chips/salsa products. When Sparta representatives first met with me in Florida, however, I was unaware that they anticipated a business relationship regarding the

chips/cheese and chips/salsa products. I believed that Sparta was interested in marketing and selling Rupari's Mighty Mouse products. I first became aware of the potential chips/cheese and chips/salsa products when the Sparta representatives presented examples of packaging for these products. Contrary to Sparta's assertion, the Sparta representatives did not provide actual product samples during the initial meeting.

4.     Sparta pursued Rupari with respect to the chips/cheese and chips/salsa products, and flew to Florida for a second meeting, at which Sparta's representatives presented Rupari with a letter of intent that Sparta had drafted. The letter of intent, attached hereto as Ex. A, was executed in Florida during that meeting.

5.     Sparta states that Rupari asked it to take certain steps to ensure that Sparta was able to manufacture the products. Rupari never asked Sparta to "do everything in its power" to make sure that Sparta had any given manufacturing capacity, and never asked Sparta to purchase equipment or make any other capital investments. Indeed, Sparta represented to Rupari that it already had enough equipment.

6.     Sparta is correct that the Supply Agreement allows Sparta to sell some of the products directly to certain customers in Minnesota. Sparta neglects to mention that Rupari had absolutely no involvement in these sales. Indeed, Rupari did not and does not have sufficient

contacts in Minnesota to market products there itself.

FURTHER AFFIANT SAYETH NOT.

_____
Robert Mintz

Subscribed and sworn to before
me this ___ day of March, 2000.

_____
Notary Public

70475

Jeannine M. Sugdinis
Commission # CC 765887
Expires SEP. 7, 2001
BONDED THRU
ATLANTIC BONDING CO., INC.

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE